**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**MICHAEL COLEMAN,**

      **Plaintiff,**

**v.**                                         **Civil Action No. 3:23-CV-115
(GROH)**

**SUPERINTENDENT DIDYMUS TATE,
SUPERINTENDENT TRAVIS MYERS,
CORRECTIONAL OFFICER SCOTT SOLTYSIAK,
CORRECTIONAL OFFICER JOHN DOE,
NURSE ANTHONY CRANE,
NURSE MELISSA MCGREAVY,
NURSE DEENA LARGENT,
NURSE SHELLY RHODES,
NURSE SHANNON JONES,
NURSE MEGAN LARGENT, and
NURSE MOLLY MARINO,**

      **Defendants.**

## <u>REPORT AND RECOMMENDATION</u>

### I.    INTRODUCTION

On March 6, 2023, the Plaintiff[1], by counsel, filed a civil rights action in the Circuit Court of Berkeley County, West Virginia, in civil action number 23-C-83. ECF Nos. 1-1, 1-2.[2] On May 2, 2023, Defendant Didymus Tate filed a petition for removal to this Court, and paid the appropriate filing fee, because the claims asserted in the state court

---

[1] The Plaintiff is a federal inmate, register number 04046-087, currently housed at Danbury FCI, in Danbury, Connecticut. At the time he alleges he was injured by state employees, he was detained at the Eastern Regional Jail ("ERJ"), where he was awaiting sentencing in this district case number 3:22-CR-8. Subsequent to his injury, he was transported and detained at the Potomac Highlands Regional Jail ("PHRJ").

[2] All Electronic Case Files (ECF) numbers cited herein are in case number 3:23-CV-115, unless otherwise noted.

complaint essentially alleged violations of 42 U.S.C. § 1983. ECF No. 1. The Plaintiff filed an Amended Complaint on July 14, 2023, which asserts that his civil rights were violated at both the Eastern Regional Jail ("ERJ") in Martinsburg, West Virginia, and the Potomac Highlands Regional Jail ("PHRJ") in Romney, West Virginia. ECF No. 28.

This matter was referred to the undersigned pursuant to 28 U.S.C. § 1915A(b) for judicial review. For the reasons set forth below, this Court recommends that Plaintiff's complaint be dismissed without prejudice for lack of jurisdiction as to Defendants John Doe, Anthony Crane, Deena Largent, Shannon Jones, Molly Marino, and with prejudice as to Defendants Didymus Tate, Travis Myers, and Scott Soltysiak. As to Defendants Melissa McGreevy[3], Shelly Rhodes, and Megan Largent, the undersigned recommends that this case proceed in the ordinary course.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Plaintiff's Amended Complaint

Plaintiff's complaint alleges four grounds for relief against the Defendants: (1) that all Defendants violated his Eighth Amendment rights against cruel and unusual punishment through deprivation of physical security, medical care, food, recreation time, and hygiene opportunities, or through deliberate indifference to those deprivations [ECF No. 28 at 7–8]; (2) that Nurse McGreevy battered the Plaintiff when she intentionally refused to clean his skin before inserting a hypodermic needle [Id. at 8]; (3) that "all Nurse Defendants" intentionally inflicted emotional distress upon the Plaintiff [Id. at 9]; and (4) that Defendants Deena Largent, Shannon Jones, Molly Marino, Shelly Rhodes, and

---

[3] The Court notes that Defendant Melissa McGreavy has also been identified as "Nurse Mitzi." Further, her counsel spells her last name as "McGreevy," which spelling the Court adopts for the body of this Report and Recommendation.

Megan Largent violated the Plaintiff's equal protection rights under the Fourteenth Amendment for deprivation of medical care with racially discriminatory intent [Id.].

Plaintiff asserts that on or about August 10 through August 11, 2022, that he was attacked by a fellow prisoner while incarcerated at the ERJ. ECF No. 28 at 2, ¶ 13. Plaintiff claims that as a result of the attack, he suffered physical injuries including fractures of his patella, femur, and hip. Id. Further, the Plaintiff asserts that he was targeted for attack by the fellow inmate because "certain gang members" incarcerated at the ERJ, knew that the Plaintiff was an informant for the FBI and ATF in multiple investigations and prosecutions. Id. at 3, ¶ 14. The Plaintiff contends that his informant status "was made known to ERJ officials," including ERJ Superintendent Didymus Tate ("Tate") via meetings between the undersigned United States Magistrate Judge, and members of the United States Marshal Service. Id. at ¶ 15. However, the Plaintiff contends that Tate "made no efforts whatsoever to implement security measures which might have protected Plaintiff from retaliation for his cooperation with authorities." Id. at ¶ 16. Further, the Plaintiff alleges that "on the day immediately preceding [his] attack" the unnamed inmate[4] who attacked him had "put another prisoner in the hospital for a coma through another violent attack." Id. at ¶ 17. Moreover, the Plaintiff contends that Tate "took no action in response to the attacking prisoner's attack on another inmate the night before," which resulted in the lack of protective measures being put into place which would have prohibited the attacker from being alone with the Plaintiff. Id. at 3–4, ¶ 19.

Plaintiff asserts that after he was attacked, he was transported to Berkeley Medical Center in Martinsburg, and then transferred to Ruby Memorial Hospital in Morgantown for

---

[4] The Plaintiff contends that after he was attacked, he asked Captain Tomlinson to identify his attacker, but Tomlinson refused on the direction of Tate.

surgery on his femur and knee, including insertion of a metal rod, plate, and twelve screws in his knee. Id. at 4, ¶ 21. Following his surgery, Plaintiff contends that he was prematurely released from hospital care, and then transferred to the medical unit of the PHRJ where he received inadequate medical care, and was mistreated. Id. at ¶ 22–24. The Plaintiff claims that he was regularly deprived of food, medical care, recreation time, showering and hygiene opportunities, and medications. Id. at ¶ 24. Further the Plaintiff contends that he was intentionally given the wrong medication by nurse "Tony." Id. at 5, ¶ 25.

The Plaintiff alleges that he "complained repeatedly about the denial of food, medication, and medical care to all nurses and staff in the medical unit, including Correctional Officer Captain Scott Captain Saltemyer." Id. at 5, ¶ 26. The Plaintiff contends that he repeatedly complained through the kiosk system, and that he believed his complaint reached Superintendent Myers "who took no action to correct the issues," and failed to ensure that the medical providers working at PHRJ were properly trained. Id. at ¶ 27–29. Further, the Plaintiff alleged that Nurse "Mitzi" refused to clean his skin before insertion of hypodermic needles, and accused him of refusing his medication, although the Plaintiff denied refusing his medication. Id. at ¶ 30, 31.

The Plaintiff claims that he was denied time for recreation and hygiene, and that nurses refused to treat or clean his wounds, or administer his medication. Id. at 6, ¶ 32 – 34. Further, the Plaintiff claims that nurses "Deena, Shelly, Shannon, Megan, and Molly all participated in an instance of racial harassment against Plaintiff where, during Christmas time, they decorated a Santa Clause black in the medical unit and made repeated racists [sic] jokes relating to the black Santa in the present of Plaintiff, who is African-American." Id. at ¶ 35.

The Plaintiff claims that in January 2023, a surgeon at Ruby Memorial Hospital informed him that "they had failed to initially catch and diagnose Plaintiff with a fractured hip." Id. at ¶ 36. According to the complaint, x-rays of the Plaintiff's hip were provided to Potomac Highlands medical staff "who had failed to identify the hip fracture and had, as a result, further failed to treat or accommodate him for any such hip fracture." Id. According to the surgeon, Plaintiff's fracture "could have been exacerbated by a failure of correctional personnel to provide Plaintiff with vitamin D" which was prescribed by Ruby Memorial professionals. Id.

The Plaintiff claims that he was prematurely released to the general population at PHRJ in December 2022, even though he was unable to properly walk. Id. at 7, ¶ 38. However, Plaintiff claims that he represented that "he was better when he was not" because he was "desperate to leave the medical unit and escape the abuse and neglect of the nurses." Id. Further, the Plaintiff claims he has suffered "agonizing pain" every day since his assault, and believes that his hip was fractured at the time of the assault. Id. at 6, ¶ 37; 7 at ¶ 39. He also contends that there is a risk that his physical injuries could become permanent based on inadequate medical treatment. Id. at ¶ 40.

In Claim 1, the Plaintiff asserts an Eighth Amendment claim against "[a]ll named Defendants," but specifically identifies Tate and Doe for failing to protect him from his August 2022 attacker. Id. at 7–8 ¶ 43.

In his second claim for relief, the Plaintiff asserts he was subject to two Eighth Amendment violations by Melissa McGreevy, whom he asserts refused to clean his skin before inserting a hypodermic needle which she then moved around in order to inflict pain, and by Anthony Crane whom he claims provided him the wrong medications. Id. at

5

8 ¶¶ 45, 46, 50. The Plaintiff's allegations in paragraphs 49 through 51 assert a battery claim against Melissa McGreevy. ECF No. 28 at 8.

The Plaintiff's third claim for relief is contained in paragraphs 52 through 55 of the complaint. Therein, the Plaintiff alleges that "all named Nurse Defendants" intentionally inflicted emotional distress. However, the Plaintiff failed to name which individual or individuals who committed specific actions which caused him emotional distress.[5]

In his fourth claim for relief, the Plaintiff alleges a Fourteenth Amendment Equal Protection claim against nurses Deena Largent, Shannon Jones, Molly Marino, Shelly Rhodes, and Megan Largent. ECF No. 28 at 9. The Plaintiff contends that when those nurses deprived him of medical care, they did so with racially discriminatory intent, and that he was subjected to unequal and disparate treatment compared with other similarly situated prisoners. Id. at ¶¶ 57 – 60.

For relief, the Plaintiff seeks: (1) injunctive relief which requires that he "be housed in a medical unit under such conditions that his serious injuries will actually be attended to and prohibiting further mistreatment"; (2) compensatory damages for pain and suffering and severe emotional distress; (3) punitive damages; (4) attorneys fees; (5) pre- and post-judgment interest on all liquidated sums; and (6) any other relief ordered by the Court. ECF No. 28 at 10.

### B.   Answer Filed by Defendants Megan Largent, Melissa McGreevy, and Shelly Rhodes

On July 27, 2023, the Defendants Megan Largent ("Largent"), Melissa McGreevy ("McGreevy"), and Shelly Rhodes ("Rhodes") filed an answer to the Amended Complaint.

---

[5]   The Plaintiff incorporated prior allegations in Count 3, but did not allege specific actions by specific alleged wrongdoers. ECF No. 28 at 9.

Therein these Defendant assert twenty-four affirmative defenses, including: failure to state a claim (First Defense); Plaintiff's injuries were not caused by the Defendants (Third Defense); qualified immunity (Fifth Defense); failure to exhaust administrative remedies (Eighth Defense); governmental, sovereign, and constitutional immunity (Fifteenth Defense); the actions of the Defendants were privileged (Sixteenth Defense); the Plaintiff's requested damages are speculative or future damages (Twenty-Second Defense); and lack of subject matter and personal jurisdiction (Twenty-Third Defense).

Further, in the "Answer and Affirmative Defenses to Amended Complaint" filed by McGreevy, Rhodes, and Largent, those Defendants deny "that there was a nurse Deena Largent employed" as alleged in paragraph 11 of the Amended Complaint. ECF No. 29 at 2, ¶ 11.

### C.   Motion to Dismiss Filed by Tate, Myers, and Soltysiak

On July 27, 2023, the Defendants Didymus Tate ("Tate"), Travis Myers ("Myers"), and Ralph Soltysiak ("Soltysiak") filed a motion to dismiss and memorandum in support thereof. ECF Nos. 30, 31. These Defendants argue that: (1) the Defendants enjoy qualified immunity from liability under § 1983; (2) the Plaintiff failed to state a claim for deliberate indifference against the Defendants, and cannot meet either the subjective or objective standards necessary to demonstrate deliberate indifference. ECF No. 31.

More specifically, as to their qualified immunity argument, Defendants Tate, Myers, and Soltysiak assert that Plaintiff's claims fail to establish that his Eighth Amendment rights were violated by the Defendants, or that the Defendants violated any clearly established right belonging to the Plaintiff. Id. at 6. Citing to White v. Pauly, 137 S.Ct. 548 (2017), the Defendants contend that, "qualified immunity attaches when an official's

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.**"** ECF No. 31 at 6.

The Defendants assert in regard to their failure to state a claim argument, that the Plaintiff failed to allege either of the two required prongs: (1) that he suffered a sufficiently serious deprivation under an objective standard; or (2) that prison officials acted with deliberate indifference to the Plaintiff's health and safety under a subjective standard. Id. at 7.

The Defendants argue that to satisfy the **objective element** of a prison condition claim the Plaintiff must show: (1) that he sustained a serious or significant mental or physical injury as a result of the challenged condition; or (2) that the Plaintiff's continued, unwilling exposure to the challenged condition creates an unreasonable risk of serious future damage to his health. Id. at 7–8. Further, the Defendants argue that to satisfy the **subjective element** of a prison condition claim the Plaintiff must show: (1) that the prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; and (2) the prison official must have also drawn the inference. Id. at 8.

Defendant Soltysiak contends that he should be dismissed as a party because the Plaintiff makes no factual allegations against him, other than identifying him as a party. Id. Defendant Tate asserts that he should be dismissed because the Plaintiff cannot satisfy the subjective component of the deliberate indifference analysis as to him. Defendant Tate asserts, "Plaintiff makes no allegation that Superintendent Tate was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed as alleged in the Amended Complaint and that Superintendent drew such

8

inference(s)." Id. at 9. Finally, Defendant Myers asserts that he should be dismissed because again the Plaintiff is unable to satisfy the subjective component analysis. Id. Defendant Myers contends that "there is no condition Superintendent Myers was specifically aware of, that specifically pertains to Plaintiff, that placed Plaintiff in a substantially serious risk of harm and that was actually appreciated by Superintendent Myers." Id. at 10. At most, Defendants Myers argues that his alleged action or inaction constituted general negligence, which is insufficient to satisfy the subjective component of the standard to establish deliberate indifference by him. Id.

### C.    Plaintiff's Response to Motion to Dismiss

The Plaintiff filed his response on August 10, 2023, which argues that Defendants Tate, Myers and Soltysiak are not entitled to qualified immunity because in his complaint he "set forth sufficient facts to state a deliberate indifference 8th Amendment Claim against Defendants." ECF No. 34 at 5. Further, the Plaintiff argues that his complaint adequately set forth allegations necessary for a deliberate indifference claim. Id. at 6. First, the Plaintiff contends that the allegations contained in Paragraphs 13, 15, 16, 17, 19, 20 of the complaint set forth facts from which the Court can infer facts related to Tate's knowledge, inaction, and resultant liability. ECF No. 34 at 7–8. Second, the Plaintiff asserts that the allegations contained in Paragraphs 4, 27, 28, and 29 of the complaint sets forth facts from which the Court could reasonably infer Myers' knowledge, inaction, and resultant liability. Id. at 8–9. Third, the Plaintiff contends that in Paragraphs 5, 26, and 27 of the complaint that he established facts from which the Court could infer Soltysiak's knowledge, inaction, and resultant liability. Id. at 9–10.

Finally, the Plaintiff asserts that he should be given an opportunity to cure any defects in his complaint, and that his "complaint against Soltysiak is capable of being cured by amendment, and because a Motion for Leave to Amend has been filed concomitant with the instant response, dismissal of plaintiff's claims against Soltysiak is inappropriate." ECF No. 34 at 10. However, a review of the docket shows that no motion for leave to amend has been filed by the Plaintiff.

**D.    Defendants' Reply**

On August 17, 2023, Defendants Tate, Myers, and Soltysiak filed a reply. ECF No. 35. Therein, Defendant Soltysiak contends that although he was identified as a party, the Plaintiff made no further allegations against him. Id. at 3. Defendant Soltysiak further argues the claim against "Correctional Officer Captain Scott Captain Saltemyer" did not assert claims against Soltysiak. Id. at 3. Soltysiak states:

> However, to the extent that Plaintiff maintains that the sole paragraph dedicated to "Correctional Officer Captain Scott Captain Saltemyer," refers to C.O. Soltysiak and is sufficient to survive a motion to dismiss, Plaintiff is mistaken. The subjective component of the deliberate indifference analysis is not met when reading together Paragraphs 26 and 27 of the Amended Complaint like Plaintiff states in his Response.
>
> . . . .
>
> Although it is not ultimately clear whether Plaintiff verbally complained to "Correctional Officer Captain Scott Captain Saltemyer" of the alleged denial of food, medication and medical care, or whether the complaints to "Correctional Officer Captain Scott Captain Saltemyer" were made only through the kiosk system when reading Paragraphs 26 and 27 together, either interpretation shares the same result: "Correctional Officer Captain Scott Captain Saltemyer" could not actually draw the inference that there was a substantial risk of serious harm to Plaintiff. Alleging that Plaintiff told "Correctional Officer Captain Scott Captain Saltemyer" of Plaintiff's complaints, or that the Court can infer "Correctional

> Officer Captain Scott Captain Saltemyer" was aware of these alleged facts from checking the kiosk system, does not establish the second portion of the subjective component of the deliberate indifference analysis. As Plaintiff's claim does not support "Correctional Officer Captain Scott Captain Saltemyer" actually drew the inference that that there was a substantial risk of serious harm to Plaintiff, a claim of deliberate indifference against "Correctional Officer Captain Scott Captain Saltemyer" does not exist. Accordingly, to the extent that this Court construes the allegations against "Correctional Officer Captain Scott Captain Saltemyer" as allegations against C.O. Soltysiak, C.O. Soltysiak should be dismissed from this matter, with prejudice.

ECF No. 35 at 4–5.

As to Plaintiff's claims against Defendant Tate, he asserts that the Plaintiff failed to plead any facts that support the notion that "Tate was aware of any facts to put him on notice the Plaintiff was at a particular excessive risk of being attacked by being placed in the medical unit with the inmate that attacked Plaintiff due to Plaintiff's status as a confidential informant, and that Superintendent Tate had drawn such inference from these facts. Id. at 5. Further, the Defendants argue that the holding of Farmer v. Brennan required the Plaintiff to allege: (1) that Tate was aware of facts to put him on notice that the Plaintiff was at an excessive risk of being attacked by being placed in the same unit with the inmate who later attacked him; and (2) that Tate actually knew that placing the Plaintiff in proximity to another inmate created a substantial risk of serious harm to the Plaintiff based on the Plaintiff's status as a confidential informant and because of the other inmates' alleged history of violence against other inmates. Id. at 7. Defendant Tate contends that the Plaintiff's response "failed to meaningfully rebut the arguments" asserted in the motion to dismiss. Id.

11

Finally, Defendant Myers argues that the Plaintiff failed to allege "facts from which an inference can be drawn that a substantial risk of serious harm to Plaintiff existed." Id. Myers contends that the allegations made against him, even if accepted as true, "still do no satisfy either of the elements in the subjective component of the deliberate indifference analysis." Id. at 8. Further, he argues that because he was not aware of facts from which an inference of substantial risk of serious harm existed, thus he was not able to draw such an inference. Id. Finally, he asserts that even if taken as true, that Plaintiff's allegations that him failed to ensure medical providers were properly trained result in simple negligence which does not satisfy the subjective component of the deliberate indifference analysis. Id. at 8–9.

### III.   LEGAL STANDARD

### A.   Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing

---

[6] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of

> of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

"While the courts liberally construe *pro se* pleadings as a matter of course . . ., judges are not also required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417- 18 (7th Cir. 1993) (quoting Haines v. Kerner).

**B.     § 1983 Claims**

The Supreme Court has held that:

> Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.

Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–257 (1978). In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court succinctly stated what a plaintiff must allege to sustain a civil rights action:

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has

---

April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> deprived him of a federal right. Second, he must allege that
> the person who has deprived him of that right acted under
> color of state or territorial law.

Gomez, 446 U.S. at 640.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. "A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." Ziglar v. Abassi, 137 S.Ct. 1843, 1860 (2017).

In Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), the Fourth Circuit:

> set forth three elements necessary to establish supervisory
> liability under § 1983: (1) that the supervisor had actual or
> constructive knowledge that his subordinate was engaged in
> conduct that posed "a pervasive and unreasonable risk" of
> constitutional injury to citizens like the plaintiff; (2) that the
> supervisor's response to that knowledge was so inadequate
> as to show "deliberate indifference to or tacit authorization of
> the alleged offensive practices,"; and (3) that there was an
> "affirmative causal link" between the supervisor's inaction and
> the particular constitutional injury suffered by the plaintiff.

(internal citations omitted). The Court further explained that, "[t]o satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." Shaw, supra, citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

"A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses"; however, a plaintiff

claiming deliberate indifference "assumes a heavy burden of proof." <u>Shaw</u>, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." <u>Id.</u>

### C.   Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 - 1 (1972) (per curiam); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." <u>Id.</u> at 555, 570. In <u>Twombly</u>, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV.    ANALYSIS

### A.    Lack of Jurisdiction over Defendants John Doe, Anthony Crane, Deena Largent, Shannon Jones, and Molly Marino Based on Failure to Perfect Service

Before addressing the merits of the Petitioner's four claims for relief, the undersigned addresses the lack of jurisdiction over five named Defendants. The Plaintiff's initial complaint named the following individuals as defendants: Correctional Officer John Doe (Name Unknown), Nurse Tony (Last Name Unknown), Nurse Deena (Last Name Unknown), Nurse Shannon (Last Name Unknown), and Nurse Molly (Last Name Unknown). ECF No. 1-1 at 1. The Amended Complaint named those individuals as: Correctional Officer John Doe (Name Unknown), Nurse Anthony Crane, Nurse Deena Largent, Nurse Shannon Jones, and Nurse Molly Marino. ECF No. 28 at 1. However, a review of the docket shows that these named Defendants were never served with a copy of the complaint.

The Court notes that under the mandate of Federal Rule of Civil Procedure 4(m), the Plaintiff has failed to timely effect service upon those Defendants. The rule provides a time limit for service:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

Fed. R. Civ. P. 4(m).

The Plaintiff filed his Amended Complaint on July 14, 2023. ECF No. 28. However,

no returns of service for Correctional Officer John Doe (Name Unknown), Nurse Anthony Crane, Nurse Deena Largent, Nurse Shannon Jones, and Nurse Molly Marino have been filed with the Clerk in the 90 days after the Plaintiff filed his Amended Complaint on October 12, 2023.

Based on the Plaintiff's failure to comply with Federal Rule of Civil Procedure 4(m) which requires him to have effected service within 90 days of filing the Amended Complaint, the undersigned recommends that Correctional Officer John Doe (Name Unknown), Nurse; Nurse Anthony Crane, Nurse Deena Largent, Nurse Shannon Jones, and Nurse Molly Marino should be dismissed without prejudice for lack of jurisdiction.

### B.  Claim 1: Eighth Amendment Violations

The Complaint asserts Eighth Amendment violations against "[a]ll named Defendants", "by and through the acts described above," but makes specific allegations only against Tate, Doe, McGreevy, and Crane. ECF No. 28 at 7–8, ¶¶ 42–46. In section IV.A. above the undersigned has already addressed its lack of jurisdiction over Doe and Crane. The Plaintiff alleges a cruel and unusual punishment claim against McGreevy for inadequate medical treatment, hygiene, and other care while detained at the PHRJ, and that claim will be addressed separately below. Although it is unclear whether the Plaintiff alleges a claim upon which relief may be granted against Myers, the allegations against Tate and Myers are addressed jointly as it relates to the absence of supervisory liability in civil rights claims.

### 1.  Qualified Immunity of Tate and Myers as Supervisors

The Plaintiff asserts that Tate: (1) violated Plaintiff's rights against cruel and unusual punishment through either intentional and malicious acts, or through deliberate

indifference to the violation of the Plaintiff's rights when Tate failed to protect the Plaintiff from physical injury from a fellow prisoner [ECF No. 28 at 3, ¶¶ 16, 19; 7–8, ¶ 43]; (2) directed a subordinate employee, Captain Tomlinson, who is not a named Defendant, to withhold identifying information about the Plaintiff's attacker [Id. at 4, ¶ 20].

The Plaintiff claims that Myers: (1) took no action to correct the Plaintiff's complaints about his medical treatment which were submitted through the PHRJ kiosk system [ECF No. 28 at 5, ¶ 28]; and (2) failed to ensure that medical providers were properly trained, and to exercise oversight over those medical providers [Id. at ¶ 29].

"Government officials may not be held liable for the unconstitutional conduct of their subordinates." Ashcroft v. Iqbal, supra, 556 U.S. at 676. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 only if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1133 (4th Cir. 1982) (abrogated on other grounds by County of Riverside v. McLaughlin, 500 U.S. 44 (1991)). Plaintiff's claim fails as his broad assertions do not identify what official policy or custom these defendants were responsible for when carried out by their subordinates.

The Plaintiff fails to allege that either of the Administrative Defendants, Tate or Myers, "through the official's own individual actions, has violated the Constitution," as required by Iqbal. To the extent that Plaintiff alleges that Tate and Myers are responsible for the actions of subordinate officials at the ERJ and PHRJ respectively, pursuant to Iqbal, individuals with supervisory responsibility are immune from liability from allegations that subordinate officials violated Plaintiff's civil rights.

The two Administrative Defendants, neither of whom Plaintiff alleges had any

contact with him directly, had, at most, only supervisory responsibility for acts of their subordinates who had contact with Plaintiff.  However, as previously noted under Iqbal, "Government officials may not be held liable for the unconstitutional conduct of their subordinates." Thus, the Plaintiff's claims against Tate and Myers which are predicated on the acts of subordinates of Tate and Myers fail to state a claim upon which relief may be granted.

Further, the Plaintiff fails to meet the elements necessary to establish supervisory liability pursuant to Shaw v. Stroud. The Plaintiff fails to show that the supervisory defendants Tate and Myers had actual or constructive knowledge of the subordinates' conduct, that the supervisory defendants' response to that knowledge was so inadequate that it demonstrated deliberate indifference to the alleged offensive practices, or any affirmative causal link between the supervisory defendants' inaction and the harm allegedly suffered by the Plaintiff.

Additionally, as noted above, vicarious liability under the theory of respondeat superior is inapplicable to § 1983 actions. Section 1983 claims are brought against individual state actors for their own acts. Ashcroft v. Iqbal, supra, 556 U.S. at 676. Although the Plaintiff has asserted violations of his Constitutional rights by Tate and Myers, he has failed to allege that those named supervisory officials personally or in their individual capacities took any action which violated his Constitutional rights. Accordingly, the Court finds that Tate and Myers are entitled to qualified immunity against Plaintiff's claims that they should be liable as the supervisors of subordinates who he claims violated his rights. Consistent with the holdings of the United States Supreme Court, it is clear that the Plaintiff fails to present a claim upon which relief can be granted as relates to Tate or Myers.

Because Plaintiff can prove no set of facts which would entitle him to relief, he fails to state a claim upon which relief may be granted, and his complaint should be dismissed with prejudice as to Tate and Myers.

### 2.    Failure to State a Claim Against Tate

Plaintiff fails to state a claim that he was subjected to cruel and unusual punishment when Tate allegedly failed to act to protect him from other prisoners. "Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016), *cert. denied sub nom.* Phillip v. Scinto, 583 U.S. 979, 138 S.Ct. 447, 199 L. Ed. 2d 340 (2017). "In order to establish that she has been subjected to cruel and unusual punishment, a prisoner must prove (1) that "the deprivation of [a] basic human need was objectively 'sufficiently serious,' " and (2) that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " De'Lonta v. Angelone, 330 F.3d at 630, 634 (4th Cir. 2003) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)). As explained in Scinto, the "objective" prong of Farmer requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.' " 841 F.3d at 225. Scinto further held that to be "sufficiently serious," the deprivation must be "extreme" by posing "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." Id., quoting De'Lonta v. Angelone, 330 F.3d at 634 (internal quotation marks and citation omitted).

Under Farmer's "subjective" prong, plaintiffs "must show that prison officials acted with a 'sufficiently culpable state of mind.'" Scinto, 841 F.3d at 225, quoting Farmer, 511 U.S. at 834. The Fourth Circuit in Scinto, citing to Farmer and several Fourth Circuit cases recognized that:

> In conditions of confinement cases, the requisite state of mind is deliberate indifference. To prove deliberate indifference, plaintiffs must show that "the official knew of and disregarded an excessive risk to inmate health or safety." Put differently, the plaintiff must show that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and ... drew that inference." Deliberate indifference is "more than mere negligence," but "less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." It "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." Under this standard, mere "disagreements between an inmate and a physician over the inmate's proper medical care" are not actionable absent exceptional circumstances.

Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016) (cleaned up).

It appears to the undersigned that even if the Plaintiff could demonstrate that he meets the objective prong—that his deprivation of safety from other inmates while in custody—he fails to demonstrate that he meets the second prong of the Farmer test. The Plaintiff claims that Tate knew of and disregarded the excessive risk to the Plaintiff's health and safety because of his status as a confidential informant. However, the Plaintiff's claim that he was injured by another inmate who previously attacked another inmate fails to state a claim that Tate was responsible for the Plaintiff's injury.

First, the Plaintiff claims that he was attacked because he was known to be a confidential informant. However, the Plaintiff does not allege that the other inmate who was attacked before the Plaintiff, was also a confidential informant, or that the attacker

was targeting confidential informants. The Plaintiff fails to link his status as a confidential informant to the targeting of any other informant. Such a causal link might have caused Tate to take precautions with Plaintiff's alleged attacker, however, no link was ever alleged or otherwise demonstrated.

Alternatively, the Plaintiff could have made a prima facie case of deliberate indifference if he demonstrated, "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official ... had been exposed to information concerning the risk and thus must have known about it...." Scinto, 841 F.3d at 226, quoting Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004). However, as noted by the Scinto court, "even officials who acted with deliberate indifference may be "free from liability if they responded reasonably to the risk." 841 F.3d at 226, quoting Farmer, 511 U.S. at 844, 114 S.Ct. 1970. Here, the Plaintiff alleges that "the prisoner who attacked Plaintiff had a long history of known violence against other prisoners." ECF No. 28 at 3, ¶ 17. However, the Plaintiff does not cite to any of these alleged incidents in the "long history," and concedes that he does not know the identity of his attacker. Id. at 4, ¶ 20.[7] At most, the Plaintiff alleges that the unknown inmate who attacked him had a single incident of harming another prisoner on the day prior to his own attack. Id. at 3, ¶ 17. Moreover, the Plaintiff does not demonstrate, or even allege that the previously injured inmate was targeted because he too was a confidential informant. Accordingly, it appears that the Plaintiff is unable to meet the subjective prong of the

---

[7] The Court notes that the Plaintiff claims that he asked for the name of his attacker, but that request was denied at the direction of Defendant Tate. Tate's decision to identify the attacker is unknown, and accordingly, it is speculative, at best, to suggest that the reason was because he was aware that the attacker had attacked another confidential informant the night before the Plaintiff was attacked.

<u>Farmer</u> test which would require him to show that Tate knew of and disregarded an excessive risk to inmate health and safety, based on the Plaintiff's status as a confidential informant. Further, the Plaintiff is unable to show that Tate also drew the inference that a substantial risk of harm existed to the Plaintiff. ᴵ

For all the above reasons, it appears that Plaintiff has failed to state a claim against Tate and this complaint should be dismissed with prejudice against Tate.

### 3. Failure to State a Claim Against Myers

To the extent that Plaintiff alleges that Myers, as a superintendent, possessed personal knowledge of any problems with Plaintiff's medical treatment, Plaintiff still fails to state a claim upon which relief can be granted. As noted above, Plaintiff claims his hip fracture was not diagnosed when he was treated at Ruby Memorial Hospital around the time of his August 2022 attack. However, the Plaintiff claims that later, in January 2023, a surgeon at Ruby Memorial advised the Plaintiff that his previously undiagnosed hip fracture could have been exacerbated by not receiving vitamin D supplements from PHRJ medical staff. ECF No. 28 at 6, ¶ 36. It appears to the undersigned that those conditions or lack of treatment, if they constitute a deprivation of rights, are not sufficiently serious to demonstrate cruel and unusual punishment, and further, that the Defendants did not act with a sufficiently culpable state of mind to establish liability under § 1983.

In <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 n.10, 97 S. Ct. 285, 288, 50 L. Ed. 2d 251 (1976), the Supreme Court illustrated the types of conditions that would qualify as serious medical needs by citing examples from several circuit court decisions. For example, loss of an ear, <u>Williams v. Vincent</u>, 508 F.2d 541 (2d Cir.1974), or refusal of a doctor to treat an allergic reaction after the injection of penicillin despite his knowledge that the inmate

was allergic to the drug, <u>Thomas v. Pate</u>, 493 F.2d 151, 158 (7th Cir. 1974), were determined to be serious medical conditions. See also <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338, (1989) (brain tumor); *Hathaway,* 37 F.3d at 66 (delay in removing broken pins from hip for over two years and nearly fifty complaints of pain). A broken jaw is a serious medical condition. <u>Brice v. Virginia Beach Correctional Center</u>, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. <u>Browning v. Snead</u>, 886 F. Supp. 547 (S.D. W. Va. 1995). In <u>Finley v. Trent</u>, 955 F. Supp. 642 (N.D. W.Va. 1997), plaintiff was found to have made a prima facie case that his arthritis constituted a medical condition which required treatment, that the condition significantly affected his daily activities, and that he suffered chronic pain as a result of this condition. A pituitary tumor is a serious medical condition. <u>Johnson v. Quinones</u>, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking, and requiring surgery to correct it is a serious medical condition. <u>Clinkscales v. Pamlico Corr. Facility Med. Dep't</u>, 2000 WL 1726592, at *2 (4th Cir. Nov. 21, 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. <u>Harrison v. Barkley</u>, 219 F.3d 132, 137 (2nd Cir. 2000). An inmate's need for prescription eyeglasses constituted a serious medical condition where, as result of not having glasses, the inmate suffered headaches, his vision deteriorated, and he was impaired in daily activities. <u>Chance v. Armstrong</u>, 143 F.3d 698, 703 (2d Cir. 1998) (citing <u>Koehl v. Dalsheim</u>, 85 F.3d 86, 88 (2d Cir.1996)). A degenerative hip condition which required surgery prior to incarceration is a serious medical condition. <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as

25

serious. <u>Webb v. Hamidullah</u>, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. <u>Loe v. Armistead</u>, 582 F.2d 1291, 1296 (4th Cir. 1978).

Conversely, conditions that have failed to satisfy the constitutional "serious medical need" standard include a kidney stone, <u>Hutchinson v. United States</u>, 838 F.2d 390, 393–94 (9th Cir.1988), a refusal to provide "high performance" footwear to an inmate with chronic ankle arthritis, <u>Alston v. Howard</u>, 925 F.Supp. 1034, 1040 (S.D.N.Y.1996), a failure to prescribe orthopedic shoes and dressing feet too tightly after bunion surgery, <u>Cole v. Scully</u>, No. 93 Civ.2066 (LAP), 1995 WL 231250, at *6 (S.D.N.Y. Apr.18, 1995), a toothache, <u>Tyler v. Rapone</u>, 603 F.Supp. 268, 271–72 (E.D.Pa.1985), and a broken finger, <u>Rodriguez v. Joyce</u>, 693 F.Supp. 1250, 1252–53 (D.Me.1988). As restated in <u>Veloz v. New York</u>, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999). Additional examples of what does not constitute a serious injury include: a foot condition involving a fracture fragment, bone cyst and degenerative arthritis, <u>Veloz</u>, supra, and carpal tunnel syndrome and a rotator cuff injury, <u>Webb v. Prison Health Services</u>, 1997 WL 298403 (D. Kansas 1997).

With the guidance of these cases, it appears that the Plaintiff's hip fracture was not a serious medical condition at the time the Plaintiff alleged he was denied medical treatment. Critically, the medical condition was never diagnosed by the surgeon or any other specialist when the Plaintiff was initially treated at Ruby Memorial. Failure by Ruby Memorial physicians to diagnose the hip fracture meant that staff at PHRJ were unaware of any hip injury or any necessary treatment. Further, as discussed below, a fractured

bone which does not present a clear injury cannot reasonably be identified by a layperson, such as Myers.

Moreover, Myers is not a medical professional, and in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (citing Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel). Thus, even assuming Myers, as a supervisor, had notice of Plaintiff's administrative grievance regarding his medical treatment or lack thereof, that notice does not rise to the level of personal involvement for liability in this suit. Further, to the extent that Myers properly relied on any professional judgment of trained medical personnel regarding Plaintiff's medical needs, that reliance was proper based on the holding of Miltier, and Myers may not be held liable under § 1983 for that reliance.

Nonetheless, the Plaintiff fails to state a claim upon which relief may be granted as to Myers. In order to state a cognizable civil rights claim related to medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976). In medical needs cases, the Farmer test requires Plaintiff to demonstrate officials' deliberate indifference to a serious medical need that has either "been diagnosed by a physician as mandating treatment or ... is so

obvious that even a lay person would easily recognize the necessity for a doctor's attention." Scinto, *quoting* Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). See Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987) *cert. denied*, 486 U.S. 1006 (1988). The Fourth Circuit previously explained in Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), that, " '[b]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on a deprivation of medical attention is satisfied only if the medical need of the prisoner is 'serious.' " *Citing* Hudson v. McMillian, 503 U.S. 1, at 9 (*quoting* Estelle, 429 U.S. at 104)." 71 F.3d at 166. "[P]risoners do not have a constitutional right 'to the treatment of his or her choice,' . . . and '[m]ere disagreement as to the proper medical treatment' does not constitute deliberate indifference." King v. United States, 536 Fed. Appx. 358, 363 (4th Cir. 2013) (*quoting* Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004). "An inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." Jackson v. Sampson, 536 Fed. Appx. 356 (4th Cir. 2013), *citing* Russell v. Shaffer, 528 F.2d 318, 319 (4th Cir. 1975).

Application of the Farmer test to Plaintiff's medical condition does not demonstrate that he is entitled to any relief, because he does not meet the first prong of the test.  The Plaintiff has not been deprived by Myers of a basic need that was objectively sufficiently serious. Although the Plaintiff alleges injury from signing himself out of the medical unit before he was fully healed from an undiagnosed hip fracture, this is not an objectively sufficiently serious condition to support an Eighth Amendment claim. A serious medical

need is one that has either been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

Here, physicians at Ruby Memorial treated the Plaintiff for his injuries, but did not identify or diagnose a hip fracture. The Plaintiff concedes that the physicians at Ruby Memorial treated him but "failed to catch and diagnose" his hip fracture. ECF No. 28 at 6, ¶ 36. The Plaintiff's missed diagnosis is not a serious medical condition as contemplated by <u>Farmer</u>. Further, failure to treat an undiagnosed injury is not the responsibility of a supervisor who relies upon trained medical professionals to make medical treatment decisions. Accordingly, Plaintiff's claim that Myers was deliberately indifferent to his medical needs fails to state a claim upon which relief may be granted.

### 4.    Failure to State a Claim Against Defendant Soltysiak

To the extent that the Plaintiff asserts a claim against Soltysiak, he fails to state a claim upon which relief may be granted. The Plaintiff identified Defendant Soltysiak as a "a correctional officer and supervisor at Potomac Highlands Regional Jail," but made no other allegation regarding Soltysiak. ECF No. 28 at 2, ¶ 5. The Plaintiff alleged that Soltysiak violated his Constitutional rights, but he failed to make a specific assertion against Soltysiak. ECF No. 28 at 2, ¶ 5. Rather, Plaintiff asserts that Soltysiak was at all relevant times a correctional officer and supervisor at an institution where he was incarcerated. <u>Id.</u> Such a claim is insufficient to demonstrate liability under § 1983. "Liability under § 1983 is personal, based upon each defendant's own constitutional violations." <u>Trulock v. Freeh</u>, 275 F.3d. 391, 402 (4th Cir. 2001) (internal citation omitted). Accordingly, to establish liability under § 1983, the plaintiff must specify the acts taken by

the defendant which violated his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). Plaintiff must demonstrate personal involvement on the part of Defendant Soltysiak and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

The Plaintiff's complaint fails to allege that Soltysiak "through the official's own individual actions, has violated the Constitution," as required by Iqbal. To the extent that the Plaintiff alleges that Soltysiak failed to ensure the Plaintiff was free from cruel and unusual punishment, he fails to allege that Soltysiak was personally responsible for any action or inaction which violated his Eighth Amendment rights. ECF No. 28 at 2, ¶ 5. Further, to the extent that Plaintiff contends that Soltysiak was responsible for the actions of any subordinate officials at the Potomac Highlands Regional Jail, pursuant to Ashcroft v. Iqbal, 556 U.S. 662, 680 – 81 (2009), individuals with supervisory responsibility are immune from liability from allegations that subordinate officials violated Plaintiff's civil rights.

The Plaintiff does not allege any action or inaction by Soltysiak which caused him any injury. Further, the Plaintiff does not allege that he had any direct contact with Soltysiak, who had, at most, only supervisory responsibility for acts of any subordinate medical providers who had contact with the Plaintiff. However, "Government officials may not be held liable for the unconstitutional conduct of their subordinates." Ashcroft v. Iqbal, supra, 556 U.S. at 676. For all of these reasons, the undersigned recommends that Soltysiak be dismissed with prejudice.

### C.       Claim 2: Battery Allegedly Committed by McGreevy

The Plaintiff has alleged that McGreevy engaged in an offensive touching, or battery, when she inserted a hypodermic needle into the Plaintiff, intentionally moved the needle around after it was inserted into the Plaintiff, to cause "maximum pain." ECF No. 28 at 8, ¶ 50. It appears that the allegations against McGreevy state a prima facie case which is not frivolous, or malicious, and does not seek relief from a defendant who is immune from such relief. In addition,  McGreevy filed an answer [ECF No. 29] to the Amended Complaint on July 27, 2023, not a motion to dismiss, or for summary judgment, the claims asserted against her should proceed in the normal course under the Federal Rules of Civil Procedure.

### D.       Claim 3: Intentional Infliction of Emotional Distress By "All Nurse Defendants"

In section IV.A. above this Court has already addressed its lack of jurisdiction over nurses Anthony Crane, Deena Largent, Shannon Jones, and Molly Marino. In his complaint the Plaintiff claims that the nurse Defendants made "repeated racists [sic] jokes relating to the black Santa in the presence of Plaintiff." But critically, the Plaintiff does not attribute any specific statement to any specific Defendant. However, to raise a successful § 1983 claim the Plaintiff must demonstrate personal involvement on the part of each defendant and a causal connection to the harm alleged must be shown. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). He fails to do so.

The Plaintiff's claim for relief fails to allege that the nurse Defendants "Deena, Shelly, Shannon, Megan, and Molly" [ECF No. 28 at 6, ¶ 35], and/or "[a]ll named Nurse Defendants" [Id. at 9, ¶ 53], intentionally inflicted emotional distress through racist comments. Nor does the Plaintiff attribute any specific comment to any specific

Defendant. Such broad claims that "all" Defendants made racist jokes are insufficient to state a claim upon which relief may be granted because the Plaintiff must show that each Defendant through their "own individual actions, has violated the Constitution," as required by Iqbal. To the extent that Plaintiff alleges that the nurse Defendants violated his Constitutional rights, he fails to allege how each of those Defendants was personally responsible for any action or inaction. Accordingly, the Petitioner's Claim 3, of intentional infliction of emotional distress, should be dismissed for failure to state a claim upon which relief may be granted.

### E.    Claim 4: Fourteenth Amendment Violations For Denial of Medical Care by Deena Largent, Shannon Jones, Molly Marino, Shelly Rhodes, and Megan Largent

In section IV.A. above this Court has already addressed its lack of jurisdiction over Deena Largent, Shannon Jones, and Molly Marino. As to Defendants Shelly Rhodes and Megan Largent, it appears that the Plaintiff's complaint states a prima facie case against those Defendants, which is not frivolous, or malicious, and does not seek relief from a defendant who is immune from such relief. In addition, Shannon Rhodes and Megan Largent filed an answer [ECF No. 29] to the Amended Complaint on July 27, 2023, not a motion to dismiss, or for summary judgment, the claims asserted against them should proceed in the normal course under the Federal Rules of Civil Procedure.

## V.    RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the Plaintiff's amended complaint [ECF No. 28] be **DISMISSED WITHOUT PREJUDICE as to** John Doe, Anthony Crane, Deena Largent, Shannon Jones, and Molly Marino.

Further, it is **RECOMMENDED** that the motion to dismiss of Defendants Tate,

Myers and Soltysiak [ECF No. 30] be **GRANTED,** and that the complaint be **DISMISSED WITH PREJUDICE** as to Tate, Myers and Soltysiak.

Finally, for the reasons set forth above, as to Defendants Melissa McGreevy, Shelly Rhodes, and Megan Largent, it is **RECOMMENDED** that this case should **PROCEED** in the ordinary course.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

33

DATED:     November 20, 2023

*/s/ Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE